732 F.2d 505
 17 Ed. Law Rep. 322
 NEWBURY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.,
and Cardinal Local School District Board of
Education, et al., Plaintiffs-Appellants,
v.
GEAUGA COUNTY METROPOLITAN HOUSING AUTHORITY, et al.,
Defendants-Appellees.
 No. 83-3045.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 16, 1984.
Decided April 16, 1984.
 
 David J. Eardley (argued), Eardley & Wantz, Richard C. Woollams, Jr., Chardon, Ohio, Francis X. Reddy, Jr., Reddy, Grau & Meek, Paul A. Grau, Garfield Heights, Ohio, J. Melvin Andrews, Andrews & Todoroff, Eastlake, Ohio, for plaintiffs-appellants.
 Norman R. Fisher, Jr. (argued), Hendershott, Huffman & Peckinpauc Co., Marcia W. Johnson (argued), Asst. U.S. Atty., Cleveland, Ohio, John E. Redeker, Sperry, Hassett & Redeker Co., Chardon, Ohio, for defendants-appellees.
 Before EDWARDS and MERRITT, Circuit Judges, and BROWN, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 This case raises a question of first impression. The United States Housing Act of 1937, as amended, 42 U.S.C. Secs. 1437-1437n, authorizes the Secretary of Housing and Urban Development to provide loans to public housing authorities to finance low income housing projects. In recognition that there should be local determination of the need for such housing, the Act prohibits the Secretary from contracting for preliminary loans unless "the governing body of the locality involved" approves by resolution the application of the public housing agency for the preliminary loans. 42 U.S.C. Sec. 1437c(e)(1). To insure local cooperation in such projects, the Act prohibits the Secretary from executing permanent loans or making annual contributions unless "the governing body of the locality involved" has entered into an agreement with the public housing agency providing for certain acts of local cooperation. 42 U.S.C. Sec. 1437c(e)(2). The question before us is this: whenever a proposed low income housing project is to be located in an area which is within the jurisdiction of several local governing bodies, which entity's or entities' approval is required by the Housing Act? More specifically, the question presented is whether certain boards of education and unincorporated townships in Geauga County, Ohio qualify as "governing bod[ies] of the locality involved" so that the Geauga County Metropolitan Housing Authority must obtain their approval in addition to the approval of the Geauga County Commissioners, the chief legislative body of the county, before constructing lower income housing units in the geographical area governed by these political subdivisions.
 
 I.
 
 2
 In 1969 the Geauga Metropolitan Housing Authority was approved by HUD as a public housing agency. In February of 1981, the Authority applied to HUD for aid in developing and financing certain public housing projects in Geauga County, Ohio. On the application form, the Authority designated "Geauga County" as the local governing body. The application form was supported by a cooperation agreement between the Housing Authority and the Geauga County Board of Commissioners, the governing body of Geauga County. The cooperation agreement provided for the acts of cooperation required by 24 C.F.R. Sec. 841.201(c) (1983).[1] An annual contributions contract was entered into between HUD and the Housing Authority, and in late 1982 the Housing Authority entered into a contract for the sale and purchase of dwelling units in Newbury Township and Middlefield Township, two unincorporated municipalities in Geauga County.
 
 
 3
 In early 1982, the plaintiffs-appellants, Newbury School District Board of Education, Newbury Township Board of Trustees and the Cardinal School District Board of Education filed suit[2] to enjoin the projects. The proposed Newbury housing project is within the boundaries of the Newbury School District and Newbury Township, while the Middlefield project is within the boundaries of the Cardinal School District. The gravamen of the plaintiff's claim is that they, rather than Geauga County, are the "governing bodies" whose approval and cooperation are required by federal law.
 
 
 4
 In the District Court all parties agreed that no material issues of fact existed and that summary judgment was appropriate. The District Court, in an opinion by Judge Krupansky construing the statute, ruled that the Geauga County Commission was the only "governing body" whose cooperation was required by the Housing Act. Newbury Local School District Board of Education v. Geauga County Metropolitan Housing Authority, No. C82-577 (N.D.Ohio Dec. 22, 1982).
 
 
 5
 Although the parties have offered thorough arguments regarding the proper interpretation of the phrase "governing body of the locality involved" as used in the Housing Act, they have paid no attention to the fact that this case arises out of administrative action and that there are laws governing judicial review of administrative action. The approval of the public housing application submitted by the Housing Authority to HUD is clearly an "agency action" within the terms of the Administrative Procedure Act. Thus the resolution of the issue presented by this appeal requires that we apply the provisions of that Act.
 
 II.
 
 6
 The Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, is entitled to judicial review thereof." 5 U.S.C. Sec. 702. "Agency action" is defined to include, inter alia, "the whole or a part of an agency grant of money, assistance, license, authority, exemption, exception, privilege, or remedy." 5 U.S.C. Secs. 551(11) & (13); see also 5 U.S.C. Sec. 701(b)(2) for purposes of Sec. 702 "agency action" has the meaning ascribed by Sec. 551. HUD's approval of the annual contributions to the Geauga County projects clearly qualifies as "an agency grant of money." Thus, our review of HUD's actions is governed by 5 U.S.C. Sec. 706, which sets out the scope of review of agency actions.
 
 
 7
 There are two provisions of section 706 relevant to the present inquiry. First, the section provides that "[t]o the extent necessary to decision and when presented, the reviewing court shall ... interpret ... statutory provisions ...." Second, the statute provides that "[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Thus, our first responsibility is to interpret the statute; after performing that interpretive act we must then review the agency action under the arbitrary and capricious standard. In our view, the Housing Act leaves it up to the Secretary of HUD, exercising reasonable judgment, to determine whether the local housing authority has selected the appropriate unit of local government to give approval.
 
 A.
 
 8
 The township and the school districts argue first that the phrase "local governing body" should be construed to mean "municipality or the nearest equivalent thereof" and cite as authority Mahaley v. Cuyahoga Metropolitan Housing Authority, 500 F.2d 1087 (6th Cir.1974). The question of which local governing body among several was the governing body contemplated by the statute was not at issue in Mahaley, and that case offers no support for their proposition.
 
 
 9
 Plaintiffs argue next that a revenue-impact analysis should control the meaning of "governing body": the local governing body whose approval is required should be that governmental entity which stands to suffer the greatest revenue impact because of waived taxes and increased services which attend lower income housing. Although this argument has some merit given the policies behind the local cooperation provisions, we decline to impose such a restrictive interpretation on the statute, for we believe that deference to local governing bodies is just one among several legislative considerations behind the Housing Act.
 
 
 10
 The appellees take a more traditional approach to the statutory interpretation issue. They argue that HUD impliedly interpreted the phrase "governing body" to mean, in this instance, the chief legislative body of the county, and that this interpretation is entitled to great deference under the rule of Red Lion Broadcasting, Inc. v. Federal Communications Commission, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Under this analysis, the phrase "governing body of the locality involved" would be subject to an unprincipled, ad hoc, case by case interpretation. Whenever local governing bodies with concurrent jurisdiction over an area targeted for lower income housing could not agree on whose approval was required, HUD would be obligated to perform an act of statutory interpretation, which interpretation would then be the subject of judicial review under the Red Lion standard. This system of interpretation does not represent the appropriate balance among local governments, HUD, and the federal courts which Congress sought to strike by enacting both the Housing Act and the Administrative Procedure Act.
 
 B.
 
 11
 The phrase "the governing body of the locality involved" is best construed to mean "the governing body of the locality approved by the Secretary of HUD in the exercise of reasonable judgment." That is, the statute vests in HUD the authority to select which governing body in an area governed by several local governmental entities is required to approve of the project and demonstrate a willingness to cooperate. Of course, the discretion afforded HUD under this interpretation is not absolute: an aggrieved party may petition the federal courts to review HUD's selection of the local governing body with which it will deal under the arbitrary and capricious standard set forth at 5 U.S.C. Sec. 706(2)(A).
 
 
 12
 This interpretation gives the greatest expression to the legislative purposes of both the Housing Act and the Administrative Procedure Act.
 
 
 13
 The Housing Act was designedto promote the general welfare of the Nation by employing its funds and credits ... to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income and, consistent with the objectives of this chapter, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.
 
 
 14
 42 U.S.C. Sec. 1437 (emphasis added).
 
 
 15
 Thus, the Act was conceived to promote the construction and continued maintenance of lower income housing, but was structured to place the "maximum amount of responsibility" of administration on the local public housing agencies. The decision to construct or maintain lower income housing can be a difficult one for a community to face. Pressure, arising from social, political and economic circumstances peculiar to each locality, may operate to impede Congress' desire "to remedy the unsafe and unsanitary housing conditions" which beset large groups of lower income families. Congress' response to these perceived pressures was to place maximum responsibility for administration with the local public housing agency, the entity which normally should be best situated to understand and to deal with the particular circumstances of the locality.
 
 
 16
 That Congress was mindful of the necessity for local governmental approval and cooperation is evidenced by the language of section 1437c: "there should be local determination of the need for lower income housing." 42 U.S.C. Sec. 1437c(e). However, as made clear by the Housing and Community Development Act of 1974, Pub.L. No. 93-383, 88 Stat. 633, Congress' primary concern is to provide for lower income housing, not to defer to local determination of housing needs.
 
 
 17
 Construing the phrase "the governing body of the locality involved" to mean "the governing body approved by the Secretary of HUD" places the responsibility to select the appropriate governing body in the first instance on the public housing authority, since the housing authority must submit a cooperation agreement with a local governing body together with its application. This accords with the congressional mandate of "vesting in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." 42 U.S.C. Sec. 1437. Once the housing authority has made this initial determination, HUD must then act on the application. HUD is the federal agency primarily responsible for enforcing the congressional mandate to "remedy the unsafe and unsanitary housing conditions which exist throughout the country." HUD regularly deals with local governmental entities and is in a better position than the federal courts to assess the particular social, economic and political forces in a local community which affect lower income housing.
 
 
 18
 If Congress should now consider the problem of overlapping jurisdiction of local governmental entities (the legislative history of the United States Housing Act of 1937 and the Housing and Community Development Act of 1974 is devoid of any discussion of this issue), we believe it would vest in HUD the authority to select among several local governmental entities, each with the power and authority to enter into a binding cooperation agreement. It is important to note that Congress expressly vested in HUD the discretion to set the level of local cooperation which must be demonstrated before funds can be disbursed. 42 U.S.C. Sec. 1437c(e)(2) ("the Secretary shall not make any contract for loans ... unless the governing body of the locality involved has entered into an agreement with the public housing agency providing for the local cooperation required by the Secretary"). That discretion regarding local cooperation cannot be appropriately exercised without giving HUD authority over the initial selection of the governing body whose cooperation will be required.
 
 
 19
 Not only does this interpretation realize the policies of the Housing Act, it fits comfortably into the framework of the Administrative Procedure Act. To construe section 1437c to permit only one answer to the question of local cooperation and to require the courts to make a case by case interpretation of the statute--even if the courts give some deference to the "interpretation" implicitly made by HUD when it approves an application--would distort the framework for administrative decision-making established by the APA. It is unwise to label HUD's approval of each cooperation agreement as an act of statutory interpretation, for that decision would then come to the courts carrying the baggage of rules of statutory interpretation which are ill-suited for reviewing this particular agency action. Rather, HUD's selection of the local governmental entity with which it will deal in this context is best treated as an "agency action," which is entitled to the deference implicit in the arbitrary and capricious standard of review. HUD is charged with enforcing the congressional policies codified in the Housing Act. The proper role of the federal courts in this context is to review HUD's determinations according to the traditional scope of review of agency activities, not to choose on an ad hoc basis which of several local governments is the right one under the Housing Act.
 
 III.
 
 20
 Having resolved the statutory interpretation issue, we now must review HUD's selection of the Geauga County Commission as the governing body with which it will deal. Our standard of review is the arbitrary or capricious standard established by 5 U.S.C. Sec. 706(2)(A). Our task under this standard is to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Our review of the record, as well as our understanding of the Housing Act, leads us to conclude that HUD indeed based its decision on a consideration of the relevant factors. To support this conclusion, we need look no further than Chapter 3735 of the OHIO REV.CODE ANN. which clearly establishes that HUD satisfied the legislative policies of the Housing Act by only insuring the cooperation of the Geauga County Commission.
 
 
 21
 The only purpose for the local consent and cooperation provisions of the Housing Act is to insure local determination of the need for lower income housing. 42 U.S.C. Sec. 1437c(e). OHIO REV.CODE ANN. Sec. 3735.26 provides inter alia that "it is necessary in the public interest to make provision for housing families of low income." To this end, it is elsewhere stated that "any state public body may contract with a metropolitan housing authority or the federal government with respect to" the provision of services to be furnished for the benefit of the housing authority. OHIO REV.CODE ANN. Sec. 3735.53. "State public body" is defined to include counties, townships, districts, and other political subdivisions. OHIO REV.CODE ANN. Sec. 3735.51(B). It is clearly the policy of Ohio to promote lower income housing and to accomplish this end the state of Ohio has authorized a county, acting alone, to enter into a binding agreement with HUD. Thus, in Ohio there has been a determination that any individual political subdivision is capable of assessing the need for lower income housing. HUD's similar conclusion is therefore not arbitrary or capricious; indeed, it accords fully with the degree of deference to local determination required by the Housing Act.
 
 
 22
 For the foregoing reasons, and in the alternative, for the reasons set out by Judge Krupansky in his District Court opinion, the judgment of the District Court is affirmed.
 
 
 
 [1]
 24 C.F.R. Sec. 841.201(c) provides that
 The [public housing authority] must provide a cooperation agreement between the [authority] and the applicable local governing body for the area in which the public housing project is to be located as evidence that the local governing body will provide the local cooperation required by HUD pursuant to the Act. This local cooperation shall include exemption from real and personal property taxes, acceptance of [public housing authority] payments in lieu of taxes, and the provision at no cost or at no greater cost by the local governing body of the same public services and facilities normally furnished to others in the community.
 
 
 [2]
 Two separate suits were originally filed in state court. The cases were subsequently removed to the United States District Court for the Northern District of Ohio, where they were consolidated